Good morning, Your Honors. May it please the Court, my name is Mary Jean Chan and I represent the United States in this appeal. I'd like to reserve two minutes for rebuttal. This Court should reverse the District Court's order reducing Malone's sentence for two independent reasons. First, as part of his negotiated plea agreement that guaranteed him a sentence that was well below what would have applied had the government filed a 851 prior and even absent that well below his applicable guideline sentence, Malone knowingly and voluntarily waived his right to file a motion under 3582 further reducing that sentence. The District Court erred by failing to... So let's say that's a pretty common provision in a plea agreement of this type, isn't it? The waiver? Yes, it is. It's an absolutely common provision. And in fact, it is oftentimes what defendants bargain away in order to obtain a favorable sentence. In this case, a stipulated sentence that the District Court at the sentencing hearing was otherwise very skeptical to impose and you can see that at excerpts of record 52 through 57. What's a defendant in this circumstance to do when there's been such a substantial change in the guidelines? The defendant in this situation was a career offender and was not eligible to obtain any benefit from the reduction of the guidelines. The Sentencing Commission made it absolutely clear in its policy statement under Section 1B.1.10... I'm actually asking hypothetically, not necessarily tethered to the facts in this case, but assume a case involving crack cocaine prior to the change in the guidelines and the usual waivers are made and then the guidelines pretty dramatically change. What's a defendant in that circumstance to do? He has probably no recourse. If the waiver was knowingly and voluntarily made and the waiver doesn't implicate any illegal sentence and the plea has not been breached by the government. Could a district court in that circumstance sue a sponte order resentencing? No, Your Honor. Why not? I don't believe the court has the authority. Well, I ask you to assume, I'm not deciding for this case yet, but assume for the purpose of my question that there's some play in the new guidelines that would allow the judge to reduce the sentence, but there's this waiver in the plea agreement. Could a district judge in that circumstance sue a sponte order rehearing? Yes, Your Honor. Under 3582C2, a court can on its own motion reduce the sentence of a defendant, but if the... But you're saying in this case, not? No, not under the circumstances of this case. And in any case, it wasn't a situation where the district court actually sued a sponte, granted its own motion. The order very specifically states that it's granting Malone's motion, and that is at excerpts of record two. The district court specifically said, I'm granting Malone's motion. And it's a situation where very clearly Malone waived his right. It's expressly waived at excerpts of record 97 in his plea agreement, paragraph number five. And Malone filed the motion. But that is an argument Malone is making, right? In other words, the argument that Judge Hawkins raised that the reason his waiver shouldn't apply because the district court had the sua sponte authority to invoke 3582. Correct, Your Honor. And this court should reject that argument because that conflates two separate issues. One is whether Malone has the right or retains the right to file a motion. And the other one has to do with whether the district court itself has the right to grant a motion of its own making. In this case, Malone waived his right to file a motion and breached that waiver by filing a motion. So if you're correct, so if we agree with the government, says, okay, you know, doesn't apply here. Could we, like, vacate this and remand it, but also inform the district court that still has the authority to exercise the sua sponte authority? This court could do that, yes. But I'd like to then move on to the second portion of my argument, which is jurisdictional. Before you do, I ordinarily don't review the names of lawyers who are going to argue before a panel. But it now occurs to me that you're the sister of a former clerk of mine. That's correct, Your Honor. And I want you to know that. And if you think for any reason I shouldn't sit on this case, there's no problem with another judge reviewing the transcript. Her sister was a clerk of mine. It just occurred to me about two years ago. And if that's any problem with the defendant in this case, just let us know, and I'll be happy to step aside. Thank you, Chief. You're welcome. Go ahead. On 3582, isn't there a time limit associated with when a judge can sua sponte, correct a sentence, or change a sentence? I don't believe that there is under 3582C2, Your Honor. At least I'm not aware of it. It has to be authorized by a retroactive guidelines amendment that applies to the defendant. As opposed to pertaining to the time limit, I don't think that there is a specific time constraint there. So on the waiver issue, just to close that up, Malone's consideration was the waiver. I mean, it was very clear from the record from the government sentencing memo that, quote, conservation of government and court resources was absolutely central to its agreement to a package deal that, again, allowed the defendant to avoid a mandatory minimum of 120 months and a much higher guidelines range. And it was absolutely knowing and involuntary. In fact, Malone has never argued otherwise. And, in fact, just about a year before his plea agreement, the Sentencing Commission made retroactive Amendment 706, which is very similar to 750. And also the defendant has raised this idea of miscarriage of justice, which the Ninth Circuit has never accepted. If this court finds a breach, which we argue that you should, then we ask for specific performance to be ordered. There is no jurisdiction for the district court on its own motion or on Malone's motion, on anyone's motion, to grant this reduction of Malone's sentence. There seemed to be some confusion in the district court about the criteria for eligibility under 3582C2. As this court stated absolutely clearly in Waters, there are two sections to the statute. First is the based on, that it only applies to a defendant who has been sentenced to a term of imprisonment, quote, based on, end quote, a sentencing range that has been subsequently lowered. There is then a separate provision, which is a requirement that the reduction must be consistent, quote, consistent with applicable policy statements issued by the Sentencing Commission. This is, under Dillon, binding policy. And at section 1B1.10A2B, the sentencing guidelines specifically say that no reduction is authorized if an amendment does not have the effect of lowering the defendant's applicable guideline range, which then goes on in the application notes to specifically expressly define as pre-departure, pre-variance. Malone's pre-departure, pre-variance applicable guideline range is calculated in the career offender portion of the sentencing guidelines. Therefore, Amendment 750 has no effect of lowering his applicable guideline range, and he is not eligible for a sentencing reduction. There is no dispute that he was a career offender at all. And also, to the extent that the defendant argues that there's a conflict with Freeman, there just isn't one. Freeman didn't address the issue, and the Third Circuit's opinion in Ware makes that crystal clear. If the court has any questions, I'll reserve the remainder of my time. Thank you. Good morning, may it please the court. My name is Nicole Giacentini. I represent the appellee, Earl Malone, who is present in court today. The heart of this appeal is what the term applicable guideline range means in the context of an 11C1C plea agreement. Before I discuss that issue, however, it is necessary that I address the government's contention that Mr. Malone waived his right to file a motion under 18 U.S.C. 3582, and therefore the district court did not have jurisdiction. It is well settled, as your honors are aware, that this court can affirm the district court on any basis finding support in the record. And in this instance, there is support in the record to affirm the district court's taking of jurisdiction to reduce Mr. Malone's sentence, and that is in 3582 itself, which clearly states that a court on its own motion may reduce a defendant's sentence based on a reduction to a guideline under which he was sentenced. What did the district court say about waiver? Your honor, the district court did not actually specifically address waiver in its opinion. And did this come up in argument? It was addressed in the briefing below, and in addition to that, the district court did also have the plea agreement as an attachment, so was well aware of the waiver issue. The United States made no secret of the fact that they wanted to hold your client to his agreement regarding resentencing, correct? That is correct. And that was part of the bargaining process? That is correct. I just want to make sure I understand this. The new law that went into effect, the FSA, the Fair Sentencing Act, had a deadline set that if you had to be sentenced before, or I'm sorry, after August 3, 2010, right? That was one of the requirements to be eligible under it. Is that correct? Your honor, it's my understanding that to be eligible, that portion corresponded to whether or not the mandatory minimum sentence would apply or not. And so in this instance, Mr. Malone's mandatory minimum sentence of 60 months cannot be changed because that portion of the FSA was not made retroactive. However, he is eligible for a reduction in the guideline that applied to him because that was made retroactive. Olin, was he sentenced? Your honor, I believe that he was sentenced in 2009. And you're saying despite the fact that . . . If I may have a moment, I can actually find . . . The more lenient sentences or penalties applied to defend sentenced after August 3, 2010, you're saying he's still eligible for this reduction? He's eligible for the reduction in the guideline range, not for the portion of the FSA that changed the statutory mandatory minimums applicable to his charged offense, if that makes sense. And is he a career offender, your client? It was stipulated in his plea agreement that he could have been . . . Could have been or was? He was a career offender. That's what it says, could have? I'm curious. I just want to know. Was he a career offender? It was stipulated that he was a career offender. Okay. And doesn't the FSA preclude eligibility for career offenders? The FSA itself does not, your honor. I think the government's argument is that based on the comment to Section 1B, 1.10 of the sentencing guidelines, which in 2011, I believe, added an extra definition of applicable guideline range, Mr. Malone is not eligible for a sentence reduction. It's not the FSA. It's the sentencing guidelines. Okay. And so how do you respond? I mean, how do you say he is eligible then? I just want to make sure I understand your position. My response to that, your honor, is that the Sentencing Commission . . . Excuse me. The Sentencing Commission's comments defines applicable guideline range, but not in the context of an 11C1C plea agreement. An 11C1C plea agreement is different, and that was made very clear in the Supreme Court case of Freeman. The Sentencing Commission, it was stated by the Supreme Court in Stinson v. United States, may make comments that are authoritative if those comments interpret a guideline and they don't conflict with the U.S. Constitution, a federal statute, or they're not clearly in conflict with the guideline itself. Now, the U.S. Supreme Court is obviously the arbiter of all things Constitution and federal statutes. So, the U.S. Sentencing Commission cannot make commentary that conflicts with U.S. Supreme Court decisions. And, in fact, Freeman was decided before the comment was amended, the comment to 1B1.10. However, the Sentencing Commission does not mention C plea agreements in their amendment to the applicable guideline range, which they certainly could have since Freeman existed. And the reason they didn't is because they cannot conflict with a Supreme Court decision. So, here you have Freeman that specifically discusses 11C1Cs and the interplay between those plea agreements and 3582 and says that the applicable guideline range in an 11C1C is that which is stated in the agreement. But Freeman didn't involve the situation here, did it? In other words, you know, a career offender who was not sentenced under the career offender guidelines. That's correct. It didn't involve a career offender. However, if I may, Your Honor, I would point you to footnote 8 in Freeman, where... In which opinion? It is in Justice Sotomayor's concurring opinion, which is the holding of Freeman. But there's a little bit of a discussion between Justice Sotomayor and Justice Roberts, who dissented. And Justice Roberts states in his dissent, look, under Sotomayor's reasoning, the judge could come up with a different calculation or the calculation in the 11C1C could be wrong and the defendant would still be eligible for a reduction. And in footnote 8, Justice Sotomayor says yes, that is correct. That means that for the purposes of an 11C1C, the applicable guideline range is that which is stated in the sentencing agreement. The government concedes that there's... District courts do retain the jurisdiction where there's been a substantial change in the guidelines to re-sentence, but that on the facts of this case, the district court could not have. What's your response to that? I think that that's incorrect. I think that, again, I think that this court has the authority to affirm because the district court could have on its own motion reduced Mr. Malone's sentence. I think that the district court certainly could have taken it upon itself to review Mr. Malone's sentence even though there was a waiver in his plea agreement. Nothing in 3582 says otherwise. If there's no further questions, I can conclude. No. In conclusion, the district court's ruling reducing Mr. Malone's sentence should be affirmed because by recognizing the party's binding agreement that Mr. Malone be sentenced under 2D1.1 of the sentencing guidelines, the district court did not, as the government suggests, rewrite the plea agreement. Rather, by reducing the sentence to reflect the amendments to the guideline range, the district court enforced the agreement's terms. And with that, I will submit. Thank you. Your Honors, Malone's plea agreement did not negotiate around the applicable guideline range. It says very clearly at Section 7 on Excerpt of Record 98 that his calculated guidelines range was pursuant to 4B1.1 career offender. There's no dispute. The district court order says that the career offender status is stipulated in the plea agreement. That's at Excerpt of Record 3. So there was really no dispute at all and no negotiation around that in the 11C1C plea agreement. Again, there's no conflict between Freeman and the 3582C2 provision as defined and limited by the sentencing policy. Freeman simply addresses the first criteria, the based-on criteria. If you look at Justice Sotomayor's concurrence throughout the opinion, she puts based-on in quotations because that was the specific provision she was talking about. That opinion dealt nothing at all with whether a reduction in Freeman's sentence would be consistent with policy statements set forth by the Sentencing Commission. Freeman did not address the situation presented in this case where somebody's pre-departure, pre-variance guideline range, the applicable guideline range, as defined by the Sentencing Commission, is different and is not lowered by the amendment, but the post-departure or variance is. After Freeman, which was issued in June 2011, the Sentencing Commission expressly resolved what was at the time an inter-circuit conflict, and it sided specifically with the 6th, 7th, 8th, and 10th Circuits on how to answer the question, which is that a person like Malone is carved out, just does not get the benefit of the retroactive amendments. This is, again, very clearly stated forth at the Third Circuit's opinion, which came after the amendments, after Amendment 759, in where at 694, F3rd at 534. And I would ask this court to take a look at that if it has any concerns. Finally, the government would ask the court to rule on both of the arguments put forth, both the waiver we asked that it be enforced, the district court ignored the waiver, even though the government specifically requested that it be enforced and made no factual findings supporting it. We would ask that that be ruled on, as well as the jurisdictional issue. And we would ask this court to reverse, keeping in mind that absent a reversal, Mr. Malone will be released on February 21st of the new year. Thank you. Thank you both for your arguments. The case is submitted. And the next case is the United States of America versus Robert Terrell, Pleasant. Ms. Bosworth, were you in the courtroom when I made the prior description? I was, Your Honor. There's no problem if you think I should not sit on this case. There are plenty of other cases.
judges: Hawkins, Tashima, Murguia